IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
Tallahassee DIVISION

JOHNNY COPELAND,

    Petitioner,

vs.                                        Case No. 4:07cv106-WS/WCS

JAMES McDONOUGH,

    Respondent.

                                   /

## REPORT AND RECOMMENDATION TO DISMISS § 2254 PETITION

Petitioner filed a 28 U.S.C. § 2254 petition and appendix in support. Docs. 1 and 2. He later paid the filing fee.

Petitioner's claims in this court allege ineffective assistance of counsel at Petitioner's 1992 resentencing. Upon initial review, it appeared that the petition was untimely filed. Those concerns were discussed and Petitioner was directed to file an amended § 2254 petition using forms supplied by the clerk. Doc. 5. He was directed to file a separate "Statement Regarding § 2244," addressing the one year time limit for filing a § 2254 petition as provided in 28 U.S.C. § 2244(d). *Id.* The order to amend is

incorporated herein by reference, though some of the language set forth in the order to amend is also repeated here.

**Standard of Review**

For claims that were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

There is a one year period for filing a § 2254 petition which usually runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). A later

possible date potentially applicable here is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D).  Once commenced, the limitations period is tolled for the time during which a "properly filed" application for relief is pending in state court. § 2244(d)(2).

This court need not reach the timeliness issue if the petition, upon initial review, fails to state constitutional claims.  "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."[1]  RULE 4, RULES – SECTION 2254 CASES.

A resentencing in a death case in Florida, which involves both a jury and the court, is as important as the guilt phase.  Petitioner had a right to the effective assistance of counsel in agreeing to waive this proceeding the same as if he had

---

[1] The statute of limitations defense is not jurisdictional, and "district courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." Day v. McDonough, 547 U.S. 198, 209, 126 S.Ct. 1675, 1684, 164 L.Ed.2d 376 (2006).  The Court in Day rejected the argument that the district court could only raise timeliness *sua sponte* at the pre-answer, initial screening stage, because after an answer was filed the affirmative defense could be waived.  *Id.*, at 207-209, 126 S.Ct. at 1682-83.  *See* United States Ex rel. Torres v. Chandler, 370 F.Supp.2d 755, 758-759 (N.D. Ill. 2005) (on initial review under Rule 4, summary dismissal was appropriate because the petition "fails totally on the merits irrespective of any questions regarding its timeliness," so it "plainly appears" the petitioner was not entitled to relief and the court "must dismiss the petition" under Rule 4).  *Cf.* Engle v. Isaac, 456 U.S. 107, 121, n. 19, 102 S.Ct. 1558, 1568, n. 19, 71 L.Ed.2d 783  (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.  It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts."); § 2254(b)(2) (authorizing denial on the merits, notwithstanding the failure to exhaust available state remedies).

agreed to waive his right to trial by entering a guilty plea.[2]  Hence, the law governing the effectiveness of counsel in the context of a guilty plea should apply here.

To be valid, a guilty plea must represent a voluntary and knowing choice among available alternatives, so it must be made with reasonably effective assistance of counsel.  Hill v. Lockhart, 467 U.S. 52, 58, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  As Petitioner was previously advised, to claim ineffective assistance under Strickland, he "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and identify how those identified acts or omissions prejudiced the outcome of the proceedings.  Doc. 5, p. 3, n. 1, citing 466 U.S. at 690, 694, 104 S.Ct. at 2066, 2068.

In the context of a guilty plea, the prejudice inquiry focuses on whether counsel's allegedly deficient performance affected the decision to enter a plea, which often resembles the usual prejudice inquiry:

> For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of trial.

---

[2] The Strickland standard, discussed *infra*, applies in the context of the sentencing phase in a death penalty case.  *See, e.g.,* Hubbard v. Haley, 317 F.3d 1245, 1260 (11th Cir.), *cert. denied,* 540 U.S. 951 (2003), and Housel v. Head, 238 F.3d 1289, 1294-96 (11th Cir. 2001), *cert. denied,* 534 U.S. 1172 (2002) (both addressing alleged ineffective assistance of counsel for failure to investigate or present mitigating evidence in the context of capital sentencing proceedings).

*Id.*, at 59, 106 S.Ct. at 371.

**Procedural history and Petitioner's claims**

The current petition is clearly untimely unless the later commencement date provided by § 2244(d)(1)(D) applies.[3]  In the separate § 2244 statement, therefore, Petitioner was directed to "set forth, under penalty of perjury, the date he discovered the factual predicate for his claim, and describe any and all efforts he made to discover the factual predicate for his claim prior to his actual discovery."  Doc. 5, p. 5.

Petitioner filed an amended petition (which is not on the form but follows the format of the standard form) and a statement regarding 28 U.S.C. § 2244.  Docs. 7 and 8.  The initial petition contained exhibits that, consistent with the order to amend, are not included with the amended § 2254 petition.[4]  References in this report and recommendation to the appendix filed as document 2 are to the letters and page numbers assigned by Petitioner, followed by the page number or numbers assigned by the electronic case filing system (ECF).

Petitioner was convicted and sentenced to death in 1979 for the 1978 felony murder of Sheila Porter.  "[T]he murder was the culmination of a course of events that began when [Petitioner] went into a store, robbed the clerk at gunpoint, and abducted

---

[3] The effective date of the time limit was April 24, 1996, after Petitioner's judgment became final, so he had a one year grace period from the effective date to file a § 2254 petition.  Wilcox v. Florida Dept. of Corrections, 158 F.3d 1209, 1211 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).

[4] Petitioner was not required to supply exhibits but advised that if he did, he must supply copies of all exhibits with the service copies of the petition.  Doc. 5, p. 4, n. 3 (noting the Respondent generally files relevant portions of the record).

her from the store." Copeland v. State, 457 So.2d 1012, 1019 (Fla. 1984), *cert. denied*, 471 U.S. 1030 (1985). Porter was taken to a motel and raped by Petitioner, Frank Smith, and Victor Hall, and then she was taken to a wooded area and shot three times in the head by Smith. Petitioner's convictions for first degree murder, kidnapping, and sexual battery were affirmed, and the death sentence was affirmed, but his separate sentence for the kidnapping (the underlying felony for the felony murder) was vacated. *Id.*, at 1018, 1020.

Petitioner's death sentence was ultimately vacated and the case remanded for a new sentencing hearing. Copeland v. Dugger, 484 U.S. 807, 108 S.Ct. 55, 98 L.Ed.2d 19 (1987) (vacating for further consideration in light of Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)); Copeland v. Dugger, 565 So.2d 1348, 1350 (Fla. 1990) ("we find that the state has failed to meet its burden of proving harmless error beyond a reasonable doubt. We thus have no choice but to vacate the sentence of death and remand for a new sentencing hearing before a jury in compliance with the requirements of *Hitchcock* and *Rogers*.") (referring to Rogers v. State, 511 So.2d 526 (Fla. 1987), *cert. denied,* 484 U.S. 1020 (1988)).

Rather than proceeding to another penalty phase and possible death sentence, however, Petitioner signed a statement of facts and entered into a sentencing agreement with the state, waiving a penalty hearing in exchange for a life sentence with no possibility of parole. App. E (composite) (doc. 2-6, pp. 7-12 in ECF). He said there that he robbed the store and brought the victim out to the car, thinking they would drop her off at the next light. Doc. 2-6, p. 11 in ECF. The three men divided the money and

then went to get Petitioner's car so Frank Smith's car would not be spotted.  *Id.*  They went to the motel, and he told Porter to take her clothes off, and the three men each had sex with her.  *Id.*, p. 12 in ECF.  They got back in his car and drove out to the woods, and Smith and Porter got out of the car and Petitioner followed them into the woods.  *Id.*  He said it was very dark, and Smith told her to get down, and she got on her knees facing away from him.  *Id.*  Petitioner said Smith shot her right away and she fell, then he shot her two more times.  *Id.*

At the 1992 resentencing hearing (also part of App. E, doc. 2-6 at pp. 13-24), Petitioner acknowledged that he signed the sentencing agreement and the statement of facts, was not using any medication, was competent, was not laboring under any mental or physical disability or ailment which would affect his reasoning, and that he understood he was giving up his right to trial on the guilt phase.  Doc. 2-6, pp. 17-20.  Petitioner was sentenced to be incarcerated for the rest of his natural life.  *Id.*, pp. 20-21.  He was told he did not have 30 days to appeal because he had agreed not to appeal.  *Id.*, p. 21.  Petitioner did not appeal.

Petitioner now challenges his 1992 resentencing pursuant to this agreement.  Petitioner claims ineffective assistance of counsel in the context of the agreement, so that his acceptance of the agreement was not knowing and voluntary.  Doc. 7, p. 3.  He claims that defense counsel Ed Stafman initially thought he could prevail at resentencing by obtaining a life sentence for Petitioner with eligibility for parole after 25 years, but then Stafman changed his mind.  *Id.*, p. 4.  Stafman told Petitioner that the State's case was "air-tight," and told him the sentence offer was his only way to avoid

the death penalty. Though Petitioner alleges he did not want to accept the offer, "coercive tactics, which are not party to this claim," convinced him to accept. *Id.* He agreed never to challenge or seek relief from the sentence as part of the agreement, and entered into the agreement based on counsel's advice as to the strength of the State's case. *Id.*, pp. 4-5.

Petitioner bases his claims on the "newly discovered evidence" of a newspaper article published in The Tallahassee Democrat right after his 1992 sentencing. *Id.*, pp. 6-8 (quoting the article in its entirety). Petitioner previously attached a photocopy of the article itself, titled "Murderer's apology unleashes mother's emotions." App. A, Ex. E (doc. 2-2, pp. 48-49 in ECF).

Petitioner alleges that he only learned of this article in April of 2004, when another inmate told him about it. Doc. 7, p. 5. With help from his aunt and her friend, Petitioner was thereafter able to retrieve the article. He claims he could not have discovered the article earlier because the newspaper was unavailable to him at the time due to his custody and, additionally, because he "was not interested in reliving the crime so did not seek to read anything in the media about it." *Id.*, pp. 5-6.

Based on the article, Petitioner makes the following claims. He represents that he believed the State had made the sentencing offer at the time he accepted it, but learned from the article that the offer was actually made *to* the State, by defense counsel. *Id.*, p. 9. Petitioner states that he believed at the time that the State would win a death sentence against him, but learned from the article that the case against him was weak due to the passage of time, with one witness not located and another witness

dead. *Id.* Finally, Petitioner claims that he learned of counsel's bias by reading the article, quoting Stafman as saying, "I feel absolutely terrible. I have a 5-year old daughter. I could see how I would want to kill anyone who would want to hurt her." *Id.*, p. 10 (quoting the article). Had Petitioner been aware at the time of sentencing of the things he later learned from reading the article, it is claimed, he would never have waived his right to a new sentencing hearing. *Id.*

In his § 2244 statement, Petitioner sets forth the procedural history, and concedes that the petition is untimely if measured from the date on which his conviction became final. Doc. 8, pp. 1-3. He claims that the date commenced under § 2244(d)(1)(D) as his F$_{LA}$. R. C$_{RIM}$. P. 3.850 motion (filed on March 3, 2005), was based upon newly discovered evidence. *Id.*, p. 4.

> . . . Petitioner states that he could never have discovered the newspaper article or its contents in question through the exercise of due diligence because he was in a constant state of protective custody and isolated from other inmates for a significant period after accepting this plea; he had no access to the newspaper in question, in a timely manner after the article was published; *and Petitioner never discussed his case or sought media information regarding it due to his deep remorse over the incident*. The State court never made a determination on whether or not this article constituted newly discovered evidence.
>
> .      .      .
>
> Since Petitioner did not discover the factual predicate of the claim upon which his motion for post-conviction relief was based until October 5, 2004 [the date his aunt stated by affidavit she sent him the article]; and no amount of due diligence (based on the facts of Petitioner's imprisonment and mental state) could have assisted Petitioner in uncovering these claims prior to this time, Petitioner's time limitations period under 28 U.S.C. § 2244(d) began to run on October 5, 2004.

*Id.*, pp. 4-5 (emphasis added, citation and footnote omitted).

In response to the Rule 3.850 motion filed in the trial court, the State noted that while a Rule 3.850 motion generally must be filed within two years after the conviction or sentence becomes final, Rule 3.850(b) has an exception for "newly discovered evidence."  App. C (doc. 2-4, p. 6 in ECF).  The State argued that the motion was time-barred because Petitioner did not show due diligence in discovering the February 22, 1992, newspaper article sooner, and, on the merits, that the claims were facially insufficient.  App. C (doc. 2-4, pp. 7-8 in ECF).

The trial court addressed the merits of the Rule 3.850 motion.  In denying the Rule 3.850 motion, the court said that "assuming a newspaper article can be considered as newly discovered evidence," the article at issue "constitutes nothing more than prosecutorial media bolstering of a decision not to further seek the death penalty in a high profile case . . . ."  App. E, p. 3 (doc. 2-6, p. 3 in ECF).  The court also found that no reference had been made by the prosecutor to the newspaper that the dead or the unavailable witnesses were crucial.  The court implied that Petitioner had failed to consider (because he did not mention) that the State still had available all the recorded former testimony from the trial, which would have been admissible pursuant to FLA. STAT. § 90.804(2)(a), and also had the newly available testimony of the accomplice, Victor Hall.  App. E, pp. 3-4 (doc. 2-6, pp. 4-5 in ECF).[5]  The court pointed out, in effect, that if the dead or missing witnesses were co-defendants, that point was unpersuasive

---

[5] Hall did not testify at the original trial or sentencing.  *Id.*, p. 4.  Stafman took Hall's deposition in 1991, excerpts of which were attached to the order denying the 3.850 motion.  *Id.*  The excerpts are with composite Ex. E, doc. 2-6, pp. 25-70 in ECF. Hall said that Petitioner and Smith took Porter out in the woods, and he did not know then and still did not know who shot her.

as the co-defendants did not testify at trial so they were not available in 1992, though Hall was now available.  App. E, p. 4 (doc. 2-6, p. 5 in ECF).  The court rejected Petitioner's legal claims, and found that he "failed to demonstrate the manifest injustice or clear prejudice required to withdraw from and reject his sentencing agreement."  App. E, p. 4 (doc. 2-6, p. 5 in ECF) (citations omitted).

The state court did not find that the Rule 3.850 motion was untimely.  If it had, the motion would not be considered properly filed for purposes of tolling under § 2244(d)(2), and "*that would be the end of the matter.*"  Pace v. DiGuglielmo, 544 U.S. 408, 413-414, 125 S.Ct. 1807, 1812, 161 L.Ed.2d 669 (2005), *quoting* (with added emphasis) Carey v. Saffold, 536 U.S. 214, 226, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002); *see also* Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1316 (11th Cir. 2006) (quoting Pace).

Accordingly, the state court did not determine the facts relevant to this court's determination of timeliness pursuant to § 2244(d)(1)(D).  Consequently, this court need not defer to fact finding by the state court.  This court, therefore, must determine when the factual predicate of the claims could have been discovered with due diligence to trigger the one year AEDPA period.  Since that determination may be made on the face of the petition, an evidentiary hearing is not needed.

The trial court did determine the facial merits of Petitioner's claims.  To the extent this court reaches the facial merits of the claims as alleged, it may grant habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

Case 4:07-cv-00106-WS-WCS    Document 11    Filed 09/11/07    Page 12 of 20

established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Petitioner's claims go to counsel's advice in the context of the 1992 sentencing agreement. Timeliness depends on the date the factual predicate of the claims could have been discovered with due diligence. § 2244(d)(1)(D). Under the language of the statute, "the beginning of the one-year period is triggered by a date that is not necessarily related to a petitioner's actual efforts or actual discovery of the relevant facts." Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002) (discussing similar language in 28 U.S.C. § 2255).

The court looks to the three ineffectiveness claims (all asserted as ground one) as supported by the 1992 article discovered in 2004. To the extent there is a claim, the court must determine when the factual predicate for each claim could have been discovered with diligence.

**Ineffectiveness based upon who made the sentencing offer**

Petitioner claims that he did not give Stafman permission to pursue plea negotiations, was not interested in negotiations, and thought the State made the sentencing offer. Doc. 7, pp. 5-9. This apparently is based on the reported statement by State Attorney Meggs about "his decision to accept Copeland's offer." *Id.*, p. 8 (quoting the article) (this statement is set forth in full context as to the next claim, *infra*). But the article also states that Petitioner "had just agreed to bypass another go-round with a jury. Instead of risking a jury's life-or-death decision, 35-year-old Copeland

agreed to live the rest of his life behind bars and never ask to get out early." *Id.*, pp. 6-7, quoting the article.

Thus, the article contained language about Petitioner's agreement to something (which could imply an offer from the State), and Meggs talking about his decision to accept Petitioner's offer. These statements hardly expose the full nature of the negotiations or who initiated them. Moreover, Petitioner himself claims that over time, Stafman became more worried about the likelihood of a death sentence. This concern is supported by reporting in the article, particularly with regard to emotions involved in such a case. The article does not establish a factual predicate to show that counsel engaged in any improper negotiations. At most it reflects there were negotiations back and forth. Petitioner knew when he entered the sentencing agreement that it was preceded by negotiations. At the beginning of resentencing the prosecutor presented to the court that "[w]e have reached an agreement in the case with the Defense that's acceptable to the State." App. E, doc. 2-6, p. 16.[6] The claim of ineffective assistance of counsel is facially insufficient.[7]

---

[6] Mr. Meggs said it had been discussed with the victim's family, and that while none of them, including probably Petitioner, "particularly are happy" with the agreement, "we do feel that it is in the best interest of all that we do this." *Id.*, pp. 16-17.

[7] "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

Case No. 4:07cv106-WS/WCS

Additionally, this claim does not rely on a factual predicate that could not have been previously discovered with due diligence. Petitioner knew about the back and forth exchange that led to his agreement at the time he entered into the agreement. He admits that he did not discover the 1992 newspaper article because he was remorseful, upset, and intentionally did not seek out information about his offenses. Petitioner could have discovered the basis for this claim had he exercised due diligence long before his AEDPA time expired in 1997. *Compare* Wims, 225 F.3d at 190-191 (delay of five months from expiration of time to appeal to discovery that counsel failed to file an appeal was not so clearly unreasonable to justify summary dismissal). Given the review of the record and the opportunity provided to Petitioner to address this issue, it is not necessary to hold a hearing to determine due diligence. *Cf.* Rivers v. United States, 416 F.3d 1319, 1322-23 (11th Cir. 2005) (an evidentiary hearing not necessary as the § 2255 movant failed to explain just what efforts he had made to pursue his claim; noting that lack of education or procedural ignorance has never been accepted as an excuse). This claim is not untimely.

**Ineffectiveness based on the strength of the case**

Petitioner bases this claim on language in the article set forth in these two paragraphs:

> [I]n Wakulla County, there would be little sympathy for the Petitioner. Emotions were so fired up that Copeland's retrial on the penalty phase had been scheduled to be held in Alachua County. Wakulla County court clerks estimated Friday's plea will save the small county more than $100,000 in not having to pay for a three-week, sequestered jury trial in Gainesville.

> Saving money, Meggs said, had nothing to do with his decision to accept Copeland's offer. More important, he said, was the nearly impossible challenge of holding what would amount to a whole new trial 14 years after the fact, with one witness dead and another that can't be found. And, Meggs said, the Porters "need to have this finally brought to an end."

*Id.*, p. 8.

In the previous order the court advised that, "[i]f Petitioner claims that counsel failed to advise him that certain witnesses would not be available at re-sentencing, he should identify the witnesses by name and how their testimony would have affected sentencing and his decision to waive the sentencing hearing." Doc. 5, p. 3, n. 1. Petitioner quotes this language, and responds:

> Petitioner is unable to identify these witnesses, as they were not named in the article. Depending on which witnesses were unavailable, Petitioner could supply this Court with the information requested on this issue. However, Petitioner points to the Florida Supreme Court's ruling in granting the new [sentencing] hearing that that Court felt it imperative to subject all of the mitigating factors to cross-examination to determine their viability and that the Court ". . . nevertheless must conclude that the *potential* body of mitigating evidence is impressive in this case." *Copeland*, 565 [So. 2d] at 1349 (emphasis in the original). Based on this reasoning, all witness testimony was essential and therefore the lack of a witness' testimony, or the lack of ability to cross-examine a dead and / or missing witness, would be crucial to Petitioner's case.

Doc. 7, pp. 9-10, n. 1.

The information in the newspaper article about missing witnesses does not supply a factual predicate for the claim that counsel was ineffective in advising Petitioner to waive the jury sentencing phase to avoid a possible death sentence. Reading the article might have prompted Petitioner to take steps to discover a factual predicate for this claim (*i.e.*, the identity of the witnesses and the substance of their testimony), but Petitioner did not pursue further investigation. Most obviously, Petitioner

Case No. 4:07cv106-WS/WCS

could have started by contacting Mr. Stafman after he read the article. Stafman would have been able to answer, if he could recall, questions about the two witnesses reported as unavailable for resentencing. He could have answered other questions Petitioner might have formulated in light of the article. If Stafman could not recall or did not want to offer further assistance to Petitioner, he might have pointed Petitioner to another source.

Further, Petitioner references the opinion of the Florida Supreme Court. The court there noted "a wide array of potential mitigating evidence," including evidence that he responded positively to incarceration, was capable of rehabilitation in prison, was mentally retarded, and suffered remorse so severe that he became psychotic. 565 So. 2d at 1349. "Although some of this evidence could be placed in doubt by proper cross-examination, we nevertheless must conclude that the *potential* body of mitigating evidence is impressive in this case." *Id.* The plain meaning of the court's emphasis was that the evidence was only "potential" and such evidence could be placed in doubt. The jury had been misinstructed regarding nonstatutory mitigating evidence, and "this record simply is unclear as to whether the trial court knew it could consider nonstatutory mitigating evidence," so harmless error had not been proven beyond a reasonable doubt. *Id.*, pp. 1349-50.

The court noted that the facts of the case had been set forth in Copeland v. State, 457 So. 2d 1012 (Fla. 1984), *cert. denied*, 471 U.S. 1030 (1985). 565 So.2d at 1349, n. 1. That case summarized the evidence at trial, and the trial court's application of aggravating and mitigating circumstances.

Petitioner's claim here is completely unsupported.  Had the article moved Petitioner to obtain actual information to formulate a claim, this court might have something of substance to consider.  Petitioner has not, however, identified these witnesses or, more importantly, set forth the testimony that would have been expected from them at a sentencing hearing.  Thus, there is no new factual predicate to support a claim of ineffectiveness in advising Petitioner to accept the sentencing agreement.

Moreover, this is a claim that Petitioner should have discovered long ago by due diligence.  Had he not elected to avoid any information about the case for so long, he would have discovered this article, pursued further investigation as suggested by the article, and would have been able to timely file this petition.

**Ineffectiveness due to bias**

Petitioner claims that the article shows that counsel was biased against him, because he referred to his own daughter and could see how he would want to kill someone who hurt her.  *Id.*, p. 10.  The statement must be read in context.  The article was titled "Murderer's apology unleashes mother's emotions."  Doc. 7, p. 6.  The article noted that the proceedings had dragged on, fourteen years had passed since the offense was committed, and that this hearing brought together the "anguished mother and her daughter's convicted murderer."  *Id.*  Petitioner's apology to the family was quoted, as was the mother's tearful response to him.  *Id.*, p. 7.  The prosecutor was quoted as saying that the victim's family needed the case to end, and that it was a travesty the case had gone on so long.  *Id.*, p. 8.  The reporter for The Tallahassee Democrat concluded:

> After Copeland headed back to Florida State Prison and the Porters headed home to cry, Stafman, the court-appointed defense attorney, said "I feel absolutely terrible. I have a 5-year-old daughter. I could see how I would want to kill anyone who would want to hurt her."
>
> But Sheila Porter's killing can't be undone, he said. "Now, you've got to address efforts to heal."
>
> When Copeland apologized and Syvell Porter fired back her hurt, Stafman said, "I think it was the first step in healing."

*Id.*

In context, therefore, this statement does not show bias against Petitioner. Petitioner himself had ended the sentencing hearing with an apology to the family of the victim. The mother of the victim responded, expressing her grief. Stafman's remark was consistent with and supportive of Petitioner's own apology, and was an effort to try to bring closure and healing to the proceeding. In that sense, Stafman's comment was a reasonable way of concluding, in the press, his defense of Petitioner.

In any event, even if such remarks had been made during sentencing, this would not necessarily have been ineffectiveness of counsel. An attorney is not a magician, and he or she cannot change hard facts. Counsel often must first candidly acknowledge the hard facts to make a more credible argument for mitigation and mercy.

The remarks also do not demonstrate an actual conflict of interest which adversely affected counsel's performance. Sentencing was over, and the important decisions to be made by counsel had been made. Petitioner has not shown how Stafman's comments had an adverse effect upon his representation of him. *See, e.g.,* Quince v. Crosby, 360 F.3d 1259, 1264-65 (11th Cir.), *cert. denied*, 543 U.S. 960 (2004)

(discussing the standard for conflict of interest claims); Schwab v. Crosby, 451 F.3d 1308, 1322 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 1126 (2007), (same).[8]

Finally, like the other claims, this claim depends entirely upon discovery of the newspaper article. The article was published in 1992. Petitioner should have discovered it well before his AEDPA time expired in 1997.

**Conclusion**

Petitioner has not shown a newly discovered factual predicate that could not have been previously discovered through the exercise of due diligence as to any of his claims, and his petition is untimely. He was resentenced in 1992, and had a grace period to file a § 2254 petition which expired on April 24, 1997. He filed a Rule 3.850 motion on March 5, 2005, but that could not toll the AEDPA period which had already expired.

Further, the three claims are facially without merit and are due to be dismissed pursuant to Rule 4. Consequently, Petitioner cannot show that the state court's adjudication of the merits of the federal claim has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

---

[8] It remains an open question whether or not an ethical or personal conflict of interest (as opposed to conflict of interest based on multiple concurrent representation) would require a showing of prejudice under Strickland, or the less demanding showing of actual conflict that adversely affected counsel's performance under Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *See* Quince, 360 F.3d at 1263 and n. 4 and Schwab, 451 F.3d at 1324-28 (both discussing Cuyler and Mickens v. Taylor, 535 U.S. 162, 166-167, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), other citations omitted).

Accordingly, it is **RECOMMENDED** that Petitioner's § 2254 petition, challenging his 1992 resentencing, be **SUMMARILY DISMISSED** as facially without merit pursuant to § 2254 Rule 4 and as untimely under § 2244(d).

**IN CHAMBERS** at Tallahassee, Florida, on September 11, 2007.

        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**